```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

EVELYN LUCKETT                                          PLAINTIFF

VS.                                CIVIL ACTION NO. 3:10CV642TSL-MTP

MADISON COUNTY NURSING HOME                             DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Madison County Nursing Home (MCNH) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Evelyn Luckett has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

On April 14, 2009, after over forty-one years of service as a Certified Nursing Assistant and then as a Licensed Practical Nurse (LPN), MCNH terminated Luckett's employment on the ostensible bases of inaction during a potentially life-threatening situation, recently-made nursing errors and continued tardiness after repeated counseling. Following her termination, plaintiff filed a charge of discrimination, claiming she was terminated because of her age, and she subsequently filed the present action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, alleging she was terminated from her employment on account of her age. See 29 U.S.C. § 623 ("It shall be unlawful for an employer

(1) to fail or refuse to hire or to discharge an individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."). Plaintiff also alleges that defendant terminated her with the purpose of preventing her from vesting in her retirement benefits, which she maintains was due to occur in two years. 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.").[1] MCNH denies that plaintiff was terminated because of her age or to prevent her from vesting in her retirement benefits, and maintains that it terminated plaintiff due to several instances of poor job performance and tardiness. It seeks summary judgment contending that plaintiff

---

[1] The complaint additionally set forth a claim for intentional infliction of emotional distress for which defendant also sought summary judgment on the basis that it is barred by a one year statute of limitations. Bellum v. PCE Constructors, Inc., 407 F.3d 734, 741 (5th Cir. 2005) ("claim under Mississippi common law for the intentional infliction of emotional distress is subject to the one-year statute of limitations set forth at Miss. Code Ann. § 15-1-35 (Rev. 1995)"). Although plaintiff failed to respond to defendant's argument as to this claim, it is clear that summary judgment is appropriate.

cannot demonstrate pretext in the face of its legitimate non-discriminatory reasons for her termination.

In support of its motion, defendant has adduced evidence demonstrating the following. Until the fall of 2008, Luckett performed her job as LPN in a generally satisfactory manner. However, on September 30, 2008, plaintiff, at the hands of Janet Moore, the newly-hired chief of nursing, received a written employee warning notice for not carrying forward a physician's orders on the resident's chart, for taking personal phone calls at work and for tardiness. Three months later, on December 29, 2008, Moore issued Luckett a second written notice. This time, according to the notice, on nine separate occasions in a two-week period, Luckett had recorded in a resident's medical chart that medications had been administered as prescribed by a physician when, in fact, the medications had not been administered. Both warning notices apprised plaintiff that further disciplinary infractions could lead to termination. Luckett refused to sign the notices.

Thereafter, on April 1, 2009, Moore issued Luckett a third employee warning notice for documenting in a patient's medical records that a dressing had been changed, when in fact it had not been. Again, the notice advised Luckett that further infractions could result in termination. As a result of this infraction, plaintiff received a three-day suspension.

On April 8, 2009, soon after her return from the suspension, an incident occurred in the dining hall while Luckett was serving as charge nurse,[2] which, according to MCNH Administrator Daniel Logan, precipitated a review of Luckett's entire personnel file, which, in turn, led to Logan's decision to terminate Luckett. According to Logan's affidavit, Moore reported to him that on April 8, a resident with swallowing problems appeared to other personnel, three Certified Nurse Assistants (CNAs), in the dining hall to be having difficulty swallowing her pureed food. According to the statement given by the CNAs and placed in Luckett's employment file, when they alerted Luckett to the resident's situation, Luckett responded that "she was good" and continued with her activities without checking the resident. Ultimately, the resident was attended by a speech pathologist who was nearby and intervened after she overheard Luckett tell the CNAs, "she's OK." According to Logan, his interview with the speech pathologist and his review of Luckett's personnel file, particularly her recent poor work performance and inattention as demonstrated by the three prior notices and the dining hall incident, prompted his decision to terminate Luckett's employment. Defendant denies that Luckett's age or retirement benefits was a factor in her termination.

---

[2] According to the affidavit of Daniel Logan, the administrator of MCNH, a charge nurse is "assigned to the dining hall during meals to ensure that residents were eating without complications and to attend to any complications residents had."

4

A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence. Where, as here, the plaintiff lacks direct evidence of discriminatory intent, the plaintiff's proof by way of circumstantial evidence is evaluated under the McDonnell Douglas framework: First, the plaintiff must establish a prima facie case of discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) (citation omitted). Second, the employer must articulate a legitimate, nondiscriminatory reason for its decision. Id. Third, if the employer carries its burden, the "mandatory inference of discrimination" created by the plaintiff's prima facie case "drops out of the picture" and the fact finder must "decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination]." Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511–12, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)).

As the Fifth Circuit observed with reference to pretext in Laxton v. Gap,

> To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. See Reeves [v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000)]. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. Wallace [v. Methodist Hospital System, 271 F.3d 212, 220 (5th Cir. 2001)]. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." Id.;

5

> Reeves, 530 U.S. at 143, 120 S. Ct. at 2106.  An
> explanation is false or unworthy of credence if it is
> not the real reason for the adverse employment action.
> See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893,
> 899 (5th Cir. 2002).  Evidence demonstrating that the
> employer's explanation is false or unworthy of credence,
> taken together with the plaintiff's prima facie case, is
> likely to support an inference of discrimination even
> without further evidence of defendant's true motive.
> Id. at 897; Russell [v. McKinney Hosp. Venture, 235 F.3d
> 219, 223 (5th Cir. 2000)].

333 F.3d 572, 578 (5th Cir. 2003).  In examining pretext, the question is "not whether [MCNH's] proffered reason was an incorrect reason for her discharge," id. at 579, but is instead "'whether [MCNH's] perception of [Luckett's] performance, accurate or not, was the real reason for her termination,'" Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408-09 (5th Cir. 1999)).

Since MCNH offers no challenge to plaintiff's prima facie case[3] and has presented a legitimate, non-discriminatory reason for Luckett's termination, see LeMaire v. Louisiana Dept. of Transp., 480 F.3d 383, 391 (5th Cir. 2007) ("Job performance is a legitimate, non-retaliatory reason for termination."), then to

---

[3]   To establish a prima facie case of age discrimination, a plaintiff must show that "(1) [she] was a member of a protected class-those persons over the age of forty; (2)[she] was qualified for the position that [she] held; (3) [she] suffered an adverse employment action; and (4) [she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004)).

6

survive summary judgment, plaintiff must present sufficient evidence to create a jury issue on pretext.

In response to defendant's motion, plaintiff does not contend that in terminating her employment, Logan, the final decisionmaker, acted with a discriminatory animus.  Rather, she charges that Logan, without conducting his own investigation into the incidents contained in her personnel file, relied on accounts from and documents created by Moore, who plaintiff charges was on a course to eliminate older nurses working at MCNH.  According to Luckett, Moore either fabricated or greatly exaggerated each of the instances for which a warning notice was issued to plaintiff, and Logan failed to inquire into the true facts of the incidents, as a result of which he cannot be said to have relied in "good faith" on the incident reports in her file.

In most instances, the determination whether an adverse employment action was taken as a result of discrimination focuses on the final decisionmaker; "the actions of individuals who did not make the challenged decision are typically not actionable." Rhoden v. Univ. of Miss. Med. Ctr., Civil Action No. 3:08CV473TSL-JCS, Slip Copy, 2009 WL 2985940 at * 3 (S.D. Miss. Sept. 15, 2009).  This being said, "[u]nder the cat's-paw theory, if employee demonstrates a co-worker with a retaliatory motive had influence over the ultimate decisionmakers, that co-worker's retaliatory motive may be imputed to the ultimate decisionmakers, thereby establishing a causal link between the protected activity

7

and the adverse employment action." Gollas v. Univ. of Texas Health Science Ctr., 425 Fed. Appx. 318, 325 (May 11, 2011) (citing Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004)).  As the Supreme Court recently held, "[I]f a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable."  Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011) (examining cat's paw theory in case based on claim under Uniformed Services Employment and Reemployment Rights Act (USERRA)).

Here, to the extent that Luckett seeks to invoke the cat's paw theory, she has failed to create a genuine issue of material fact on the issue of pretext.  The record before the court is devoid of evidence that Moore performed any act motivated by discriminatory animus, or intended that any act cause Luckett's termination.  Luckett's speculation that Moore acted with an impermissible motive in issuing employee warning notices or in bringing the choking incident to Logan's attention is insufficient to show a causal link.  See Septimus v. Univ. of Hous., 399 F.3d 601, 611 (5th Cir. 2005) (employee's mere speculation as to motive insufficient to create genuine issue of material fact).

Further, to the extent that Luckett has attempted to show pretext through a showing that the MCNH's proffered explanation for her termination is false or "unworthy of credence," she has

8

likewise failed. Although plaintiff maintains that Moore falsely accused her of various infractions, upon examination of plaintiff's arguments, it is clear that her position is not that Moore entirely fabricated the incidents for which a warning was issued, but that, for one reason or another, the conduct was not worthy of punishment. Specifically, regarding the September 2008 employee warning notice, Luckett takes the position that the manner in which she documented entries on the resident's charts was standard practice at MCNH and/or in the industry. With regard to the December 2008 incident, wherein Moore cited her for documenting that medicine had been administered when the patient had refused to take it, Luckett does not deny that she indicated in the patient's chart that the prescribed medication had been administered. Instead, she appears to take the position that in the years prior to Moore's tenure at MCNH, it was acceptable practice when a patient refused medication to indicate in the patient's chart that the medication had been administered while making another notation somewhere else in the chart that the medication had been refused. According to Luckett, although Moore failed to give specific training as to how she wanted notations made in the medical records, she nonetheless reprimanded Luckett for failing to comply with this unspoken directive.

Regarding the April 1, 2009 notice, Luckett contends that Moore falsely accused her of falsifying a document and of neglecting to finish a wound dressing. According to Luckett's

brief, it was the responsibility of the nurse on the next shift, Charles Griffing, to change the patient's dressing. Plaintiff further maintains that Griffing admitted in his deposition that the initials in the patient's chart indicating that the dressing had been changed were actually his.[4] Luckett claims that she tried to explain to Moore that Griffin had assumed responsibility and that the handwriting was not hers, but Moore would not listen to reason.

Regarding the final incident on April 9, Luckett does not dispute the "general outline of facts" offered by defendant. Instead, she chides defendant for casting aspersions on her handling of the situation when everyone at the facility knew of the patient's difficulty swallowing and the CNAs simply overreacted. She further asserts that the three CNAs, who had received training from the speech pathologist, could have provided assistance if it had truly been necessary and points out that the patient suffered no lasting ill effects from the incident.

Despite her insistence that she has demonstrated that defendant's reasons for her termination are unworthy of credence, at best, plaintiff's challenges amount to an argument that MCNH's perception of Luckett's job performance was inaccurate. This is insufficient to create an issue of fact as to pretext. Clearly, as regards the first, second and fourth incidents, plaintiff disputes only that her conduct was not so egregious as to warrant

---

[4]

10


the punishments meted out by defendant. Laxton, 333 F.3d at 579 (in examining pretext, the question is "not whether [defendant's] proffered reason was an incorrect reason for her discharge"). Further, as to the third incident concerning the failure to change a patient's dressing, while Luckett maintains that Moore falsely accused her of initialing the patient's chart and asserts that Griffing admitted both that it was his responsibility to change the dressing and that the initials were his, in the deposition excerpt submitted by plaintiff, Griffing actually stated that he had no specific recollection of this incident. In the excerpts provided to the court, there is no admission by Griffing that the initials in the patient's chart are his. Griffing did state that if Luckett had asked him to take care of a dressing change because she did not have time to do so on her shift, he would have done it for her. Aside from the question of the authorship of the initials in the patient's chart, Luckett has failed to come forward with any proof to refute Moore's testimony that, in the event that a nurse is unable to finish her assigned duties, such as a dressing change, during her shift, the facility's policy is that the nurse is to notify her supervisor of this fact before leaving work and that Luckett violated this policy by making an informal request to a co-worker on the next shift. Again, at best, plaintiff argues only that she should not have been punished for this conduct, not that she did not engage in the conduct. She thus has not created an issue of fact as to whether this reason

11

was false or pretextual. Accordingly, based on the foregoing, the court concludes that plaintiff has failed to create a genuine issue of material fact on the issue of pretext. Therefore, MCNH's motion for summary judgment as to the ADEA claim should therefore be granted.

Additionally, even assuming for the sake of argument that plaintiff had demonstrated a prima facie case of interference with ERISA benefits, it follows from her failure to create an issue for trial on the issue of pretext in the face of defendant's legitimate non-discriminatory reason for her termination, that summary judgment is in order on this claim, as well.[5] Simply put,

---

[5]To prevail on her ERISA claim, Luckett

has to establish a prima facie case that [MCNH] fired her with a specific discriminatory intent to retaliate for exercising an ERISA right or to prevent attainment of benefits which she would become entitled to under the plan. 29 U.S.C. § 1140; Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 761 (5th Cir. 1996); Hines v. Mass. Mutual Life Ins. Co., 43 F.3d 207, 209 (5th Cir. 1995); McGann v. H & H Music Co., 946 F.2d 401, 404 (5th Cir. 1991), cert. denied, 506 U.S. 981, 113 S. Ct. 482, 121 L. Ed. 2d 387 (1992). The plaintiff in such an ERISA employment discrimination test need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from her discharge, and this inference of discrimination can be proven by circumstantial evidence. Carlos v. White Consol. Indust. Inc., 934 F. Supp. 227, 232 (W.D. Tex. 1996). To dispel the inference of discrimination which would arise from a prima facie case, [MCNH] must articulate a non-discriminatory reason for its actions, and then the burden shifts to [Luckett] to prove this reason is a pretext and the real purpose was denial of ERISA benefits. Lehman v. Prudential Ins. Co. of America, 74 F.3d 323, 331 (1st Cir. 1996).

12

plaintiff has offered no proof which tends to demonstrate that the real purpose of her termination was to deny her ERISA benefits. See Stafford v. True Temper Sports, 123 F.3d 291, 295 (5th Cir. 1997) (concluding that, in order to survive summary judgment on ERISA claim, in face of legitimate non-discriminatory reason for termination, plaintiff must come forward with proof demonstrating that reason for termination was pretextual).

Based on all of the foregoing, it is ordered that MCNH's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of April, 2012.

/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE

---

Stafford v. True Temper Sports, 123 F.3d 291, 295 (5th Cir. 1997).